Betty L. HULL, Plaintiff-Appellant-Petitioner,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Defendant-Respondent.

Supreme Court

*No. 97–0659. Oral argument September 10, 1998.—Decided
December 15, 1998.*

(Also reported in 586 N.W.2d 863.)

*See Callaghan's Wisconsin Digest, same topic and section number.

629

For the plaintiff-appellant-petitioner there were briefs by *Virginia M. Antoine,* Milwaukee, *John D. Murray,* Appleton and *Habush, Habush, Davis & Rottier, S.C.,* Milwaukee and and oral argument by *Virginia M. Antoine.*

For the defendant-respondent there was a brief by *Peter M. Farb* and *Gabert, Williams & Farb,* Appleton and oral argument by *Peter M. Farb.*

¶ 1. N. PATRICK CROOKS, J. Petitioner Betty L. Hull (Hull) seeks review of a court of appeals decision[1] affirming an order of the Fond du Lac County Circuit Court, the Honorable Henry B. Buslee presiding, in which the court dismissed Hull's complaint and entered a declaratory judgment in favor of State Farm Mutual Automobile Insurance Company (State Farm). Hull claimed that she was entitled to uninsured motorist (UM) benefits under her two State Farm liability insurance policies because the owner of the vehicle which struck and killed her husband was uninsured. Relying on *Hemerley v. American Family Mutual Insurance Co.,* 127 Wis. 2d 304, 379 N.W.2d 860 (Ct. App. 1985), both the circuit court and court of appeals denied UM coverage. Both courts held that the vehicle was not uninsured under either the Wisconsin statute which mandates UM coverage, Wis. Stat. § 632.32(4) (1995–96),[2] or the language of the State Farm policies because the driver's use of the vehicle was insured under a liability policy.

---

[1] *Hull v. State Farm Mut. Auto. Ins. Co.,* No. 97–0659, unpublished slip op. (Wis. Ct. App. Nov. 12, 1997).

[2] All future references to the Wisconsin Statutes will be to the 1995–96 version unless otherwise noted.

¶ 2. We conclude that Hull is entitled to UM coverage under both Wis. Stat. § 632.32(4) and the terms of her State Farm policies. First, we find that UM coverage is available to Hull under the plain language of the UM provisions in Hull's two State Farm insurance policies. Second, we hold that § 632.32(4) requires UM coverage whenever either the owner or the operator of a motor vehicle is allegedly negligent and is not covered by liability insurance. Since the allegedly negligent owner of the motor vehicle in this case was not insured, § 632.32(4) requires that State Farm provide UM coverage to Hull. In accordance with the reasoning herein, we overrule *Hemerley* and reverse the decision of the court of appeals.

## I.

¶ 3. The facts of this case are not in dispute. On July 14, 1994, Hull's husband was struck and killed by a pickup truck on the grounds of Badger State Auto Auction (Badger State) in Fond du Lac, Wisconsin. William Borth, the driver of the truck, was an employee of Badger State, and was trying to stop the truck after he had driven it into the auction ring. The truck was apparently in a poor state of repair and failed to stop when Borth pressed the brakes.

¶ 4. Roger Reany, the truck's owner, had consigned the truck to Badger State for auction. Reany did not have any insurance covering the truck or its operation. Borth's use of the truck was insured by Milwaukee Mutual under Badger State's liability policy.[3]

---

[3] Reany was treated as the owner of the truck by the parties and the lower courts. It seems that there may be some question as to whether he in fact owned the truck, however, because Reany had not yet paid its purchase price. He apparently had

¶ 5. Instead of proceeding against Borth, Badger State and/or Milwaukee Mutual, Hull sued State Farm, claiming that she was entitled to uninsured motorist (UM) benefits under her two State Farm policies for the wrongful death of her husband. In her complaint, filed on January 24, 1996, Hull contended that she was entitled to UM damages under her policies because the truck was not insured by its owner and had been negligently maintained. State Farm countered that the truck did not fit the policy definition of "uninsured motor vehicle," because its use by Borth was insured by Milwaukee Mutual.

¶ 6. State Farm filed a motion for declaratory judgment and for dismissal of Hull's complaint. The circuit court heard the motion on November 20, 1996, and granted it on February 6, 1997. The court determined that the truck was not uninsured, and therefore, Hull could not recover UM benefits under her liability policies. In reaching its decision, the circuit court relied on *Hemerley v. American Family Mutual Insurance Co.*, 127 Wis. 2d 304, 379 N.W.2d 860 (Ct. App. 1985).

¶ 7. The plaintiff in *Hemerley* was injured while riding in a car which was not covered by liability insurance. *See Hemerley*, 127 Wis. 2d at 306. The car's driver was not its owner, but the driver's operation of the vehicle was insured. *See id.* The plaintiff sought UM benefits under Wis. Stat. § 632.32(4) and her husband's insurance policy for injuries she alleged were caused by the driver's negligence. *See id.* The court of appeals held that the *Hemerley* plaintiff was not entitled to UM benefits under the policy language or § 632.32(4), and

---

consigned the truck for auction so he could obtain the money to pay for it. *See* Scheduling Conf. Statement at 2. In any event, it is undisputed that there was no liability insurance covering the truck's ownership or maintenance.

ruled that a vehicle is only an "uninsured motor vehicle" under § 632.32(4)(a)1 if neither its owner nor its operator is insured.[4] *Id.* at 305.

¶ 8. Also relying on *Hemerley,* the court of appeals affirmed the circuit court's decision that Hull was not entitled to UM coverage. The court began by holding that although Hull's policies seemed to create three situations in which UM coverage exists — "when there is no ownership liability insurance, no maintenance liability insurance or no use liability insurance" — *Hemerley* required the court to rule that UM coverage exists "only when no coverage exists under any scenario." *Hull v. State Farm Mut. Auto. Ins. Co.,* No. 97–0659, unpublished slip op. at 6–7 (Wis. Ct. App. Nov. 12, 1997). Consequently, the court concluded that Hull was not entitled to UM coverage under the language of her insurance policies because the driver's use of the truck was insured. Similarly, the court ruled that under *Hemerley*'s interpretation of Wis. Stat. § 632.32(4), the fact that the driver's use of the vehicle was insured required it to rule that Hull was not entitled to UM coverage under § 632.32(4).

¶ 9. The court of appeals rejected Hull's argument that the present case is distinguishable from *Hemerley.* The court reasoned that *Hemerley* governs this case because the relevant language of Wis. Stat. § 632.32(4) has not changed since *Hemerley* was decided in 1985. Also, in relation to the insurance policy, the court found that "the uninsured motorist provision in this case is, in essence, the equivalent of

---

[4] We note that the pertinent language of Wis. Stat. § 632.32(4) has not changed since the *Hemerley* decision. *See Hemerley v. American Family Mutual Insurance Co.,* 127 Wis. 2d 304, 306–07, 379 N.W.2d 860 (Ct. App. 1985)(quoting Wis. Stat. § 632.32(4)); Wis. Stat. § 632.32(4).

the uninsured motorist provision in *Hemerley*." Slip op. at 7.

In the final paragraph of its decision, however, the court of appeals expressed its disagreement with *Hemerley*:

> *Hemerley* itself acknowledged that "[t]he purpose [of § 632.32(4), Stats.] is to compensate an injured person when liability coverage is unavailable to the person who ought to pay. . . ." Yet, the *Hemerley* conclusion seems at odds with the statutory goal. Instead, the decision seems, in our judgment, to defeat the purpose of § 632.32(4). As such, we believe that *Hemerley* was decided incorrectly.

Slip op. at 7 (citation omitted).

¶ 10. This court granted Hull's petition for review of the court of appeals' decision. At the same time, we granted State Farm's motion to supplement the record with a copy of the summons and complaint in a second suit, which Hull filed on June 16, 1997.[5] We now reverse the court of appeals.

## II.

¶ 11. We begin by identifying the standard of review. In a declaratory judgment action, the granting or denying of relief is a matter within the discretion of the circuit court. *United Fire & Cas. Co. v. Kleppe*, 174 Wis. 2d 637, 640, 498 N.W.2d 597 (1993). A reviewing court will uphold a discretionary decision as long as the

---

[5] In her complaint in the second suit, Hull claimed that Borth negligently operated the vehicle. Badger State and Milwaukee Mutual were also named as defendants. *See Hull v. Borth*, No. 97-CV–256 (Fond du Lac County Cir. Ct., filed June 16, 1997).

circuit court's exercise of discretion was not erroneous. *Id.* at 640–41. An exercise of discretion is erroneous if it is based on an error of law. *Id.* at 641; *Edland v. Wisconsin Physicians Serv. Ins. Co.,* 210 Wis. 2d 638, 643, 563 N.W.2d 519 (1997); *State v. Hutnik,* 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968).

¶ 12. This case involves the construction of insurance policy language and the interpretation of a statute. Both matters present questions of law. *See Clark v. American Family Mutual Ins. Co.,* 218 Wis. 2d 169, 173, 577 N.W.2d 790 (1998); *Cardinal v. Leader Nat. Ins. Co.,* 166 Wis. 2d 375, 382, 480 N.W.2d 1 (1992). Accordingly, this court reviews both issues *de novo,* although we benefit from the analyses of the circuit court and the court of appeals. *See Clark,* 218 Wis. 2d at 173; *Aiello v. Village of Pleasant Prairie,* 206 Wis. 2d 68, 70, 556 N.W.2d 697 (1996); *Cardinal,* 166 Wis. 2d at 382.

### III.

¶ 13. The first issue is whether Hull is entitled to UM coverage pursuant to the terms of her two State Farm insurance policies. Interpretation of insurance policies is controlled by the rules of contract construction. *General Cas. Co. v. Hills,* 209 Wis. 2d 167, 175, 561 N.W.2d 718 (1997); *Donaldson v. Urban Land Interests, Inc.,* 211 Wis. 2d 224, 230, 564 N.W.2d 728 (1997); *Kremers-Urban Co. v. American Employers Ins.,* 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984). In construing an insurance policy, the main goal is to determine and carry out the intentions of the parties. *General Cas.,* 209 Wis. 2d at 175; *Kremers-Urban,* 119 Wis. 2d at 735. The court must interpret the policy

language to mean what a reasonable person in the insured's position would understand it to mean. *General Cas.*, 209 Wis. 2d at 175; *Kremers-Urban*, 119 Wis. 2d at 735.

¶ 14. When the meaning of a term in an insurance policy is plain, the court should apply the term in accordance with the "everyday meaning" which a lay person would ascribe to it, and should not turn to rules of construction or case law. *Kremers-Urban*, 119 Wis. 2d at 735–36; *see also Amidzich v. Charter Oak Fire Ins. Co.*, 44 Wis. 2d 45, 170 N.W.2d 813 (1969). Words or phrases are ambiguous if they may be reasonably interpreted in more than one way. *Donaldson*, 211 Wis. 2d at 231; *Cardinal v. Leader Nat. Ins. Co.* 166 Wis. 2d 375, 383, 480 N.W.2d 1 (1992); *Kremers-Urban*, 119 Wis. 2d at 735.

¶ 15. Hull's two State Farm liability insurance policies contain identical UM provisions. Both policies provide UM coverage for injuries caused by an "uninsured motor vehicle," which the policies define as "a vehicle, the ownership, maintenance or use of which is not insured."[6] The parties' arguments focus on the

---

[6] The uninsured motorist (UM) provisions in the two State Farm policies provide in full:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.
>
> Uninsured Motor Vehicle—means:
>
> > 1. a land motor vehicle, the ownership, maintenance or use of which is:
> >
> > > a. not insured or bonded for bodily injury liability at the time of the accident; . . .

*See* Petitioner's App. at 131 (emphasis omitted).

proper construction of the word "or." State Farm argues that "or" should be interpreted conjunctively, in which case a vehicle is an "uninsured motor vehicle" under the policies only if its ownership *and* its maintenance *and* its use are all uninsured. This approach is essentially the same as that taken by the court of appeals in *Hemerley. See Hemerley*, 127 Wis. 2d at 309–310. Hull contends that "or" should be interpreted in the disjunctive sense, meaning that a vehicle is an "uninsured motor vehicle" in any of three scenarios: (1) when the vehicle's ownership is uninsured; (2) when the vehicle's maintenance is uninsured; (3) when the vehicle's use is uninsured. We agree with Hull.

¶ 16. The word "or," in the phrase "ownership, maintenance or use," is unambiguous. The meaning of "or" is plain: "or" is a connector of alternative choices in a series. In an everyday setting, "or" is interpreted disjunctively. A reasonable person in the insured's position would not think that "or" means "and," contrary to State Farm's contention.

¶ 17. We are also persuaded by the fact that the first definition of "or" in the American Heritage Dictionary confirms that "or" should be interpreted disjunctively. The definition states that "or" is "[u]sed to indicate an alternative, usually only before the last term of a series: hot or cold; this, that, or the other." 1271 American Heritage Dictionary (3d ed. 1992) (emphasis omitted). In addition, at least two other courts have construed State Farm UM provisions identical to the one in Hull's policies, and both courts ruled that UM coverage was available when a vehicle's ownership was uninsured but its use was insured. *See Whitehead v. Weir*, 862 S.W.2d 507, 508 (Mo. App. 1993); *State Farm Mut. Auto. Ins. Co. v. Taylor*, 725 P.2d 821, 822–23 (Mont. 1986). Since these courts did

not require that both the vehicle's ownership *and* its use must be uninsured before the vehicle qualifies as an "uninsured motor vehicle" under the policy provision, the courts effectively adopted a disjunctive interpretation of the word "or" in the phrase "ownership, maintenance or use."

¶ 18. The court of appeals held that *Hemerley* controlled the insurance policy interpretation issue in this case. The court of appeals failed to recognize, however, that the language of the American Family policy in *Hemerley* is quite different than the language of Hull's State Farm policies. While Hull's policies define "uninsured motor vehicle" as "a vehicle, the ownership, maintenance or use of which is not insured," the policy in *Hemerley* defined "uninsured motor vehicle" as "a motor vehicle which is: (a) not insured by a bodily injury liability bond or policy at the time of the accident." *See Hemerley*, 127 Wis. 2d at 309. The dissimilarity of these two definitions renders *Hemerley* unhelpful in our interpretation of the UM provisions in Hull's insurance policies.

¶ 19. We conclude that the word "or" in the phrase "ownership, maintenance or use" in Hull's two State Farm insurance policies should be interpreted disjunctively, in accordance with its plain meaning. Consequently, a vehicle is an "uninsured motor vehicle" under the policies' language in three distinct situations: (1) when its ownership is uninsured; (2) when its maintenance is uninsured; (3) when its use is uninsured. Because the maintenance of the pickup truck in this case was uninsured, the truck was an "uninsured motor vehicle" under Hull's State Farm policies, even though its use was insured under Borth's policy. Accordingly, Hull is entitled to UM coverage

639

under the terms of her insurance policies, if, as alleged, the truck was not insured by its owner for bodily injury liability and had been negligently maintained by him. We, therefore, reverse the order dismissing Hull's complaint.

## IV.

¶ 20. Next, we consider whether Wis. Stat. § 632.32(4) entitles Hull to UM coverage for damages caused by the alleged negligence of an uninsured vehicle owner, when the vehicle's operator is insured.[7] Section 632.32(4) provides, in relevant part:

---

[7] We recognize that we need not determine whether Hull is entitled to UM coverage under Wis. Stat. § 632.32(4), since we have already decided that Hull is entitled to UM coverage under the terms of her two insurance policies. As a general rule, when our resolution of one issue disposes of a case, we will not address additional issues. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938).

However, to further judicial economy and guide trial courts and litigants, we may consider additional issues which have been fully briefed and are likely to recur. *See State ex rel. Jackson v. Coffey*, 18 Wis. 2d 529, 532, 118 N.W.2d 939 (1963); *Metropolitan Greyhound Mgt. Corp. v. Wisconsin Racing Bd.*, 157 Wis. 2d 678, 693–94, 460 N.W.2d 802 (Ct. App. 1990). Hull and State Farm have fully briefed and argued the issue of whether Hull is entitled to UM coverage under § 632.32(4). Further, since it is not unusual for an uninsured motorist case to involve more than one alleged tortfeasor, and § 632.32(4) affects all motor vehicle liability insurance policies in the state, the question of the applicability of the *Hemerley* interpretation of § 632.32(4) is bound to arise again. Consequently, in the interest of conserving judicial resources and clarifying an important point of law, we have chosen to decide whether Hull is entitled to UM coverage under § 632.32(4).

Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioner:

(a) *Uninsured Motorist.* 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident.

2. In this paragraph "uninsured motor vehicle" also includes:

a. An insured motor vehicle if before or after the accident the liability insurer of the motor vehicle is declared insolvent by a court of competent jurisdiction.

b. An unidentified motor vehicle involved in a hit-and-run accident.

3. Insurers making payment under the uninsured motorists' coverage shall, to the extent of the payment, be subrogated to the rights of their insureds.

¶ 21. The ultimate goal of statutory interpretation is to determine and give effect to the intent of the legislature. *See Clark,* 218 Wis. 2d at 173; *Anderson v. City of Milwaukee,* 208 Wis. 2d 18, 25, 559 N.W.2d 563 (1997); *State v. Sweat,* 208 Wis. 2d 409, 415, 561 N.W.2d 695 (1997). First, we examine the text of the statute. *See Clark,* 218 Wis. 2d at 173; *Stockbridge Sch. Dist. v. DPI Sch. Dist. Boundary Appeal Bd.,* 202 Wis.

2d 214, 220, 550 N.W.2d 96 (1996). If the meaning of the statute is plain, we do not look beyond the statutory language to determine legislative intent. *See Sweat,* 208 Wis. 2d at 415; *Stockbridge,* 202 Wis. 2d at 220. If the statute is ambiguous, the court turns to extrinsic aids such as the statute's purpose, context, scope and history to ascertain the intent of the legislature. *See Clark,* 218 Wis. 2d at 173; *Stockbridge,* 202 Wis. 2d at 220. Statutory language is ambiguous whenever it may reasonably be interpreted in more than one way. *See Sweat,* 208 Wis. 2d at 416. We must determine the meaning of words and phrases within a statute in light of the statute as a whole. *See id.*

¶ 22. State Farm urges that we interpret Wis. Stat. § 632.32(4) in accordance with *Hemerley v. American Family Mutual Insurance Co.,* 127 Wis. 2d 304, 379 N.W.2d 860 (Ct. App. 1985). In *Hemerley,* the court of appeals construed the precise language of § 632.32(4) which is at issue in this case.[8] *See Hemerley,* 127 Wis. 2d at 306–07. First, the *Hemerley* court held that the statute was ambiguous because it could reasonably be read as requiring insurance for injuries caused either by uninsured *vehicles* or by vehicles owned or operated by uninsured *persons. See id.* at 308. To interpret the term "uninsured motor vehicle" in the statute, the court then turned to the purpose of § 632.32(4), and stated:

> The purpose [of Wis. Stat. § 632.32(4)(a)1] is to compensate an injured person when liability coverage is unavailable to the person who ought to pay. That

---

[8] As we noted previously, the *Hemerley* court construed a different version of Wis. Stat. § 632.32(4) than the 1995–96 version, which we interpret here, but the relevant language of the two versions is identical.

purpose makes it natural to speak in terms of uninsured motorist coverage. Thus, the supreme court has said the purpose is to compensate for "an uninsured motorist's negligence to the same extent as if the uninsured motorist were insured." In view of that purpose, we construe "uninsured motor vehicle" in sec. 632.32(4)(a)1, Stats., to include a vehicle, neither the owner nor the operator of which is insured by liability insurance.

*Id.* (citation omitted).

¶ 23. We begin our discussion with the plain language of the statute. Although Wis. Stat. § 632.32(4) refers in subsections (a)1 and (a)2 to "uninsured motor vehicles," subsection (a)3 speaks in terms of "uninsured motorists' coverage." *See* Wis. Stat. § 632.32(4)(a). Furthermore, the first paragraph of § 632.32(4) describes the insurance policies required to contain UM provisions as "[e]very policy. . .which insures with respect to any motor vehicle." This paragraph does not serve to clarify whether "uninsured motor vehicle" is a vehicle which is not covered by insurance or a vehicle owned or operated by someone without insurance. Consequently, as the court of appeals recognized in *Hemerley*, "reasonable persons could read sec. 632.32(4), Stats., either to require coverage to protect persons injured by a motor vehicle which is not insured, or to require coverage to protect persons injured when the vehicle's owner or operator has no insurance."[9] *Hemerley*, 127 Wis. 2d at 308. We

_____

[9] Although the court of appeals did not expressly state in the present case that Wis. Stat. § 632.32(4)(a)1 is ambiguous, we believe that holding to be implicit in its ruling that *Hemerley*'s construction of § 632.32(4)(a)1 controlled its determination of whether the truck qualified as an "uninsured motor

therefore agree with the court of appeals' conclusion in *Hemerley* that the term "uninsured motor vehicles" in § 632.32(4)(a)1 is ambiguous.[10]

¶ 24. Next, to decipher the meaning of "uninsured motor vehicles" which was intended by the legislature, we turn to the underlying purpose of Wis. Stat. § 632.32(4). We recently examined the purpose of Wis. Stat. § 632.32(4) in *Clark v. American Family Mutual Insurance Company*, 218 Wis. 2d 169, 577 N.W.2d 790 (1998). In *Clark*, this court stated that "[T]he purpose of uninsured motorist coverage 'is to compensate an insured who is the victim of an uninsured motorist's negligence to the same extent as if the uninsured motorist were insured.' " *Clark*, 218 Wis. 2d at 178 (quoting *Nicholson v. Home Ins. Co.*, 137 Wis. 2d 581, 591–92, 405 N.W.2d 327 (1987)). We summed up our previous holdings regarding the legislative purpose of § 632.32(4) as follows:

> In prior cases this court has viewed the statutorily required uninsured motorist coverage provision as if it were the liability coverage of the tortfeasor. . . .Thus uninsured motorist coverage essentially

vehicle" under the statute. *See Hull*, No. 97–0659, unpublished slip op. at 3, 6–8.

[10] We emphasize that we do not hold that the phrase "ownership, maintenance or use" in Wis. Stat. § 632.32(4) is ambiguous. Rather, the phrase "ownership, maintenance or use" is as unambiguous in the statute as it is in Hull's State Farm insurance policies. In the statute, in contrast to the State Farm policies, the phrase "ownership, maintenance or use" is not part of the definition of "uninsured motor vehicle." Consequently, our conclusion that the term "uninsured motor vehicles" in § 632.32(4) is ambiguous does not implicate the "ownership, maintenance or use" language.

substitutes for insurance that the tortfeasor should have had.

*Id.; see also United Fire & Cas. Co. v. Kleppe,* 174 Wis. 2d 637, 643, 498 N.W.2d 226 (1993); *St. Paul Mercury Ins. Co. v. Zastrow,* 166 Wis. 2d 423, 433, 480 N.W.2d 8 (1992). Stated another way, the legislative purpose of § 632.32(4) is to place the insured in the same position as if the uninsured motorist had been insured.[11] *See* Arnold P. Anderson, *Wisconsin Insurance Law* § 3.1, at 3–5 (4th ed. 1998).

¶ 25. In view of this legislative purpose, the court in *Hemerley* determined that "uninsured motor vehicle" in Wis. Stat. § 632.32(4) means "a vehicle, neither the owner nor the operator of which is insured by liability insurance." *Hemerley,* 127 Wis. 2d at 308. In *Hemerley,* the sole alleged tortfeasor, the driver of the vehicle, was insured. In a case like the present one, however, there is more than one potential tortfeasor:

___

[11] In 1995, legislative amendments to Wis. Stat. § 632.32 overturned our holdings in a line of cases including *Nicholson v. Home Ins. Co.,* 137 Wis. 2d 581, 405 N.W.2d 327 (1987), and *St. Paul Mercury Ins. Co. v. Zastrow,* 166 Wis. 2d 423, 480 N.W.2d 8 (1992), as we recognized in *Clark v. American Family Mutual Ins. Co.,* 218 Wis. 2d 169, 177, nn.3–4, 577 N.W.2d 790 (1998). *See* 1995 Wis. Act 21. These amendments did not affect our statements in *Nicholson* and *Zastrow* regarding the underlying purpose of § 632.32(4), however. The legislative purpose of UM coverage remains to place the insured in the same position he or she would have been in, had the uninsured motorist been insured. *See Clark,* 218 Wis. 2d at 178. The effect of the amendments is to render the underlying purpose of § 632.32(4) subject to new statutory provisions relating to stacking and drive-other-car exclusions. *See* Arnold P. Anderson, *Wisconsin Insurance Law* § 3.1, at 3–5 (4th ed. 1992); 1995 Wis. Act 21 (creating Wis. Stat. § 632.32(5)(f)–(j)). None of the new provisions are implicated in this case.

the owner, for the allegedly negligent maintenance of the vehicle, and the driver, for the allegedly negligent use of the vehicle. In this suit, Hull seeks UM coverage for the allegedly negligent maintenance of the truck by its uninsured owner. The only way in which to place Hull in the same position she would have been in, had the uninsured motorist been insured, is to require that UM coverage be provided to her. In the absence of UM coverage for the owner's alleged negligence, Hull would be denied a source of compensation for the owner's alleged negligence, even though the driver's alleged negligence would be covered under the driver's Milwaukee Mutual insurance policy. Application of the *Hemerley* definition of "uninsured motor vehicle" would deny Hull UM coverage for the owner's alleged negligence, because of the driver's insured status. Consequently, we agree with the court of appeals in this case that the *Hemerley* definition of "uninsured motor vehicle" contravenes the legislative purpose of Wis. Stat. § 632.32(4) in the multiple tortfeasor situation presented in this case.

¶ 26. We conclude that the only way in which the legislative purpose of Wis. Stat. § 632.32(4) can be served in this case is to hold, as we do, that § 632.32(4) requires UM coverage whenever either the owner or the operator of a motor vehicle is allegedly negligent and is not covered by liability insurance. Since the application of *Hemerley*'s definition of "uninsured motor vehicle" in situations like the current one, in which there is more than one alleged tortfeasor, would contravene the purpose underlying § 632.32(4), we overrule *Hemerley*.[12]

---

[12] For the sake of clarity, we choose to overrule *Hemerley* rather than limit it to its facts.

¶ 27. State Farm objects to our construction of Wis. Stat. § 632.32(4) on two grounds. First, State Farm expresses concern that its obligation to provide UM coverage will be almost limitless under our ruling. Specifically, State Farm contends that insurers will be required to provide UM coverage for injuries caused by the negligent maintenance of the vehicle by remote tortfeasors, such as mechanics and auto parts suppliers. Section (a)1 states, however, that UM coverage must only be provided to those entitled to recover from "owners or operators of uninsured motor vehicles." Wis. Stat. § 632.32(4)(a)1. We find that this "owners or operators" restriction is sufficient to provide a logical stopping point for mandatory UM coverage.

¶ 28. Second, State Farm maintains that this court already accepted *Hemerley*'s interpretation of Wis. Stat. § 632.32(4) by citing *Hemerley* with approval in *Schwochert v. American Family Mutual Insurance Company*, 139 Wis. 2d 335, 351, 407 N.W.2d 525 (1987).[13] The facts of *Schwochert* parallel the facts of *Hemerley*, however, and both cases present situations distinct from the one in this case. In both *Hemerley* and *Schwochert*, the plaintiffs claimed UM damages for

---

[13] We note that in *Wood v. American Family Mutual Insurance Company*, 148 Wis. 2d 639, 649, 436 N.W.2d 594 (1989), this court withdrew some language from *Schwochert v. American Family Mutual Insurance Company*, 139 Wis. 2d 335, 407 N.W.2d 525 (1987), which it characterized as "dictum." That language has no bearing on the court's consideration of *Schwochert* in this case. Moreover, this court has ruled since *Wood* that the rest of *Schwochert* "is still the law in Wisconsin," *Schwochert v. American Family Mut. Ins. Co.*, 172 Wis. 2d 628, 636, 494 N.W.2d 201 (1993), and has overruled portions of *Wood* itself, *see Matthiesen v. Continental Cas. Co.*, 193 Wis. 2d 192, 202, 532 N.W.2d 729 (1995).

negligence of the driver of the vehicle, who was covered by insurance, based on the theory that no insurance covered the vehicle itself. *See Schwochert*, 139 Wis. 2d at 337–39; *Hemerley*, 127 Wis. 2d at 306. The single tortfeasor in each case was insured. In *Schwochert*, the parties even stipulated that the sole cause of the accident was the negligence of the driver. *See Schwochert*, 139 Wis. 2d at 337.

¶ 29. In contrast, there are two potential tortfeasors in this case, and the one whose alleged negligence gives rise to UM damages, the truck's owner, was not insured. Neither *Hemerley* nor *Schwochert* considered the application of the *Hemerley* definition of "uninsured motor vehicle" in the multiple tortfeasor scenario presented in this case. Therefore, the citation of *Hemerley* in *Schwochert* should not be considered as approval of the *Hemerley* definition in the very different factual setting presented here.

¶ 30. We hold that Wis. Stat. § 632.32(4) requires UM coverage whenever either the owner or the operator of a motor vehicle is allegedly negligent and is not covered by liability insurance. Since the allegedly negligent owner of the motor vehicle in this case was not insured, § 632.32(4) requires that State Farm provide UM coverage to Hull.

### V.

¶ 31. In sum, we conclude that Hull is entitled to uninsured motorist coverage under both the terms of her two State Farm insurance policies and Wis. Stat. § 632.32(4). Because we find that the decisions of both the court of appeals and the circuit court are based on errors of law, and because we overrule *Hemerley*, we reverse the court of appeals.

¶ 32. We hold first that the language of the identical UM provisions in Hull's insurance policies plainly provides UM coverage in this case. We interpret the word "or" in the phrase "ownership, maintenance or use" disjunctively, in accordance with its plain meaning. Therefore, the policies provide UM coverage when either the ownership or the maintenance or the use of the vehicle is uninsured. Since the maintenance of the pickup truck in this case was uninsured, the truck was an "uninsured motor vehicle" under the State Farm policies, even though its use was insured under the driver's policy. Accordingly, Hull is entitled to UM coverage under the terms of her insurance policies, if, as alleged, the truck was not insured by its owner for bodily injury liability and had been negligently maintained by him. We, therefore, reverse the order dismissing Hull's complaint.

¶ 33. Further, we conclude that Wis. Stat. § 632.32(4) requires UM coverage whenever either the owner or the operator of a motor vehicle is allegedly negligent and is not covered by liability insurance. Any rule to the contrary would contravene the legislative purpose of the statute, which is "to compensate an insured who is the victim of an uninsured motorist's negligence to the same extent as if the uninsured motorist were insured." *Clark*, 218 Wis. 2d at 178 (citations omitted). Since the allegedly negligent owner of the motor vehicle in this case was not insured, § 632.32(4) requires that State Farm provide UM coverage to Hull.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded.