COURT OF APPEALS
DECISION
DATED AND FILED

January 24, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1283**

STATE OF WISCONSIN

Cir. Ct. No. 2022ME375

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF T.M.G.:

WINNEBAGO COUNTY,

    PETITIONER-RESPONDENT,

  V.

T.M.G.,

    RESPONDENT-APPELLANT.

        APPEAL from orders of the circuit court for Winnebago County: MICHAEL S. GIBBS, Judge. *Affirmed.*

¶1      LAZAR, J.[1] Thomas[2] appeals from orders for extension of his commitment under WIS. STAT. § 51.20(1)(a) and for the involuntary administration of medication under WIS. STAT. § 51.61(1)(g). Thomas asserts, among other things, that Winnebago County failed to introduce sufficient evidence to establish the statutorily required finding of dangerousness necessary for recommitment, that the trial court failed to make the necessary factual findings to order involuntary administration of medication and treatment, and that there was insufficient evidence to determine that the required explanation about medication and treatment was given to him. Thus, he contends, both orders must be reversed. The County refutes each point and, in addition, argues that Thomas's appeal is moot. This court concludes that the County did introduce sufficient evidence to prove, by clear and convincing evidence, that Thomas was dangerous under § 51.20(1)(a)2.b. and that the statutory requirements of § 51.61(1)(g) were met. Both orders are therefore affirmed.

## BACKGROUND

¶2      The County filed a petition for a year-long recommitment of Thomas and for involuntary medication and treatment pursuant to WIS. STAT. ch. 51. The County alleged that Thomas was mentally ill, a proper subject for treatment, and dangerous under the standards articulated in WIS. STAT. § 51.20(1)(a)2.b. and e. ("the second standard," relating to danger to others, and "the fifth standard," relating to inability to apply an understanding of advantages and disadvantages of

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] This court refers to the subject individual by a pseudonym pursuant to WIS. STAT. RULE 809.19(1)(g), to protect his confidentiality.

treatment and to provide for one's own health or safety). The trial court conducted a hearing on this petition over two days, on November 22, 2022 and December 2, 2022.

¶3 At the hearing, the County's first witness was Dr. George Monese, a staff psychiatrist at the Wisconsin Resource Center[3] (WRC) who had been Thomas's treating psychiatrist since around 2016. Monese testified that Thomas had schizoaffective disorder, a clinically recognized mental illness that "grossly impair[s] [Thomas's] judgment, behavior, [and] capacity to recognize reality." He further testified that Thomas had a "very long history of violence" and elaborated that recent examples (both of which Thomas told Monese about) included throwing feces or urine at a prison officer he believed was trying to harm him in March 2022 and sending an unidentified white powder in a letter to a court in September 2022. Monese agreed that this behavior was driven by Thomas's mental illness and that, if treatment were withdrawn, he believed Thomas would become a proper subject for commitment. Monese also testified that Thomas was "incompetent" to make treatment decisions and refuse medication because "[h]e's unable to understand that he has a mental illness" and has shown that he needs treatment by, among other things, "refus[ing] to go for appointments" with mental health providers and other medical providers such as an orthopedic surgeon to help with a severe knee problem. Finally, Monese testified that Thomas was unable to understand the advantages, disadvantages, and alternatives to medications and treatment, which had been explained to him. In particular, Monese suggested that

---

[3] The Wisconsin Resource Center is "a correctional institution that provides psychological evaluations, specialized learning programs, training and supervision for inmates whose behavior presents a serious problem to themselves or others in state prisons." WIS. STAT. § 46.056.

3

"a long-acting injectable, like Invega," would have therapeutic value for Thomas. Due to a sustained hearsay objection and the trial court's opinion that "Monese certainly did testify sufficiently as to the contents of the report itself," Monese's report was not admitted into the Record.

¶4      The County's second and final witness was Deputy Stacey Bahr with the United States Marshal Service. Bahr was assigned to investigate letters sent to a federal courthouse with Thomas's name and information in the return address. She testified that the FBI came to investigate the white powder coming out of these letters and that the letters were, indeed, treated as threatening because an "unknown substance … getting into the ventilation system or anything like that is a cause for concern." On cross examination, Bahr stated that she could not testify as to what the white substance was.

¶5      Thomas testified on his own behalf. He made multiple references to Monese and other state or county personnel trying to kill him. On cross examination, he stated that he did not recall throwing feces at a WRC staff member's face.

¶6      The trial court found that Thomas was "currently suffering from a major mental illness, that being schizoaffective disorder" and that he was a proper subject for treatment based on "testimony that he's getting better." The court determined that the County met its burden of proof to show the requirements for recommitment under both the second and fifth standards of dangerousness and for involuntary medication, noting in its oral ruling that there had been "evidence[] of substantial probability of physical harm to others, individuals" and "recent homicidal or violent behavior" as related by Monese. The court further stated that "[w]hen one sends white powder to a federal courthouse, it is certainly a threat by

today's standards as well as with respect to the E standard." With respect to medication, the court noted the testimony that Thomas was "unable to understand the advantages, disadvantages, and alternatives for the particular medication or treatment [that] has been explained to him" and found that "[h]e was unable to apply an understanding to his condition."

¶7 Thomas's recommitment expired on December 1, 2023. Nevertheless, he appeals, arguing that the trial court did not make the necessary factual finding to support a determination of dangerousness under the fifth standard and that there was insufficient evidence supporting dangerousness under both the second and fifth standards. Thomas also asserts that the court failed to make the necessary factual findings to order involuntary medication.

## STANDARD OF REVIEW

¶8 Civil commitments require the petitioner (the County)[4] to establish by clear and convincing evidence that the subject individual is mentally ill, a proper subject for treatment, and dangerous to him/herself or others under at least one of five statutory standards. *Langlade County v. D.J.W.*, 2020 WI 41, ¶29, 391 Wis. 2d 231, 942 N.W.2d 277; WIS. STAT. § 51.20(1)(a)1.-2., (13)(e). This is especially critical because "[i]t may be true that an erroneous commitment is sometimes as undesirable as an erroneous conviction." *Addington v. Texas*, 441 U.S. 418, 428 (1979). Upon petition, a trial court may extend a commitment for up to one year. Sec. 51.20(13)(g)1.; *D.J.W.*, 391 Wis. 2d 231, ¶31.

---

[4] Under WIS. STAT. ch. 51, county governments are given "primary responsibility for the well-being, treatment and care of the mentally ill." WIS. STAT. § 51.42(1)(b).

¶9    The review of a recommitment order—determining whether the petitioner has met its burden of proof—"presents a mixed question of law and fact." *Waukesha County v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783.  A trial court's findings of fact are upheld unless they are clearly erroneous, *id.*, and an appellate court will "accept reasonable inferences from the facts." *Winnebago County v. Christopher S.*, 2016 WI 1, ¶50, 366 Wis. 2d 1, 878 N.W.2d 109 (citation omitted).  An appellate court may search the record for evidence to support the trial court's findings of fact.  *Becker v. Zoschke*, 76 Wis. 2d 336, 347, 251 N.W.2d 431 (1977).  Whether those facts satisfy the statutory standards, however, is a question of law that is reviewed de novo. *Marathon County v. D.K.*, 2020 WI 8, ¶18, 390 Wis. 2d 50, 937 N.W.2d 901.

¶10    Thomas does not contest the trial court's factual findings under the second standard, so this court will begin by addressing his remaining contention related to that standard:  that there was insufficient evidence to support the trial court's finding that Thomas presented a danger to others.[5]  In order to support a commitment, it was the County's burden to show that Thomas evidenced

> a substantial probability of physical harm to other individuals as manifested by … recent homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm.

WIS. STAT. § 51.20(1)(a)2.b.

---

[5] As discussed in the following paragraphs, this court concludes that the evidence is sufficient to support a finding of dangerousness under the second standard; it therefore need not address Thomas's arguments related to the fifth standard.  *See Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 640 n.7, 586 N.W.2d 863 (1998) ("As a general rule, when our resolution of one issue disposes of a case, we will not address additional issues.").

¶11    Thomas argues that "[t]here was no evidence that [Thomas] was dangerous to others." He dismisses Monese's testimony regarding the March 2022 incident of throwing excrement at a guard, stating that it was not explicitly relied upon by the trial court, and argues that the evidence about Thomas sending a threatening letter containing a white powder to a federal courthouse "is not dangerous in this particular context." Thomas supports this argument by pointing out that his incarceration would make acquiring a harmful substance difficult; the low likelihood that the substance in the letter was actually harmful, he argues, means "there was never a substantial probability of any harm to others." In addition, he contends that "the act of mailing an unknown white powder is not violent as contemplated by the statute."

¶12    Even setting aside the evidence of Thomas's act of throwing urine or feces at a guard,[6] this court concludes that evidence of Thomas's sending an envelope containing white powder to a federal courthouse is sufficient to satisfy the second standard's dangerousness requirement. Our supreme court interpreted the relevant language from the second standard in **D.K.**:

> [T]he plain language of WIS. STAT. § 51.20(1)(a)2.b. requires a showing that it is much more likely than not that the individual will cause physical harm to other individuals. This conclusion can be supported by evidence that at least one person was placed in "reasonable fear of violent behavior and serious physical harm" to that same person or another. This reasonable fear must be "evidenced by" a "recent overt act," an "attempt," or a "threat to do serious physical harm."

---

[6] The trial court did refer to Monese's testimony about "recent homicidal or violent behavior" but did not mention the March incident in any detail. Because this court determines that the September threat suffices to support a dangerousness determination, it need not address whether the March incident should be considered in Thomas's sufficiency of the evidence challenge. *See* **Hull**, 222 Wis. 2d at 640 n.7.

*D.K.*, 390 Wis. 2d 50, ¶42 (footnote and citations omitted).

¶13    Thus, the required showing is that it is much more likely than not that Thomas *will* cause physical harm to others (which can be shown with evidence that others were placed in reasonable fear)—not that he did harm others or that recent acts showing his propensity to hurt others were likely to succeed. Analyzing whether Thomas presents a danger to others going forward (that could be ameliorated by a commitment under WIS. STAT. ch. 51) rather than the actual amount of harm he was likely to succeed in inflicting in the past is "in keeping with the legislature's intent to focus upon the mental state of the subject to be examined, not those who may [have been] affected by the subject individual's behavior." *See R.J. v. Winnebago County*, 146 Wis. 2d 516, 521, 431 N.W.2d 708 (Ct. App. 1988). Thomas's argument that there was no substantial probability of harm to others from him sending an envelope containing an unidentified white powder—which he posits was likely to be harmless given that he was in prison without access to harmful substances—misses the point.

¶14    Thomas's additional argument is equally unconvincing. He asserts that his threat—which he says may be a violation of WIS. STAT. § 947.017, but does not constitute a "violent offense" or "violent crime" like making a bomb threat—does not satisfy the statute's requirement of putting another person in "fear of violent behavior and serious physical harm." It does not matter whether making the threat constituted a "violent crime" or "violent behavior" in and of itself; what is relevant is whether Thomas *threatened* "violent behavior and serious physical harm." *See D.K.*, 390 Wis. 2d 50, ¶¶47-49 (holding that a subject individual's "homicidal thoughts" and "threats to the police department"—which are not violent behavior per se—were sufficient to establish dangerousness under the second standard). Obviously, there is a threat inherent in sending an envelope

containing an unidentified white powder; people would reasonably fear the substance to be a harmful agent, such as anthrax, that could cause physical harm and even death.[7]   Indeed, Bahr testified that an "unknown substance, white substance, getting into the ventilation system or anything like that is a cause for concern."   As the trial court found, "[w]hen one sends white powder to a federal courthouse, it is certainly a threat by today's standards."   Thomas does not argue that this finding was clearly erroneous, and this court concludes as a matter of law that the trial court's findings and evidence presented at trial are sufficient to establish dangerousness under the second standard.

¶15   Having determined that Thomas's recommitment was valid under the second standard of dangerousness, this court addresses the remaining issue raised by Thomas:  whether there were adequate factual findings and evidence that an explanation of the advantages and disadvantages of and alternatives to taking medication, as required by WIS. STAT. § 51.61(1)(g)3.   To review Monese's testimony in this regard, he opined that Thomas suffers from schizoaffective disorder and explained that this is a mental illness that meets the statutory definition of that term in WIS. STAT. § 51.01(13)(b).  He also testified that Thomas is "unable to understand that he has a mental illness[,] ... [a] very severe, chronic mental illness[] that needs treatment."   Monese recommended a specific medication, which he opined would have therapeutic value for Thomas.  He testified that he explained the advantages, disadvantages, and alternatives to medication to Thomas and provided examples of each of these.  Lastly, he testified

---

[7] Powdered anthrax spores have been mailed through the U.S. postal system and caused fatalities in the past.  Centers for Disease Control and Prevention, *The Threat of an Anthrax Attack*, https://www.cdc.gov/anthrax/bioterrorism/threat.html (last visited Jan. 12, 2024).

that Thomas is not capable of expressing an understanding of the advantages, disadvantages, and alternatives that were explained to him. The court found:

> There has been testimony that [Thomas] is unable to understand the advantages, disadvantages, and alternatives for the particular medication or treatment has been explained to him. He was unable to apply an understanding to his condition. He doesn't believe that he has any mental illness.

¶16 This court concludes that Monese's testimony tracks closely the statutory language governing involuntary medication orders. *See* WIS. STAT. § 51.61(1)(g)4. As in *Christopher S.*, 366 Wis. 2d 1, it was sufficient to support a finding of incompetency to refuse medication. And also as in *Christopher S.*, the court's findings were adequate to support its order as well. *See id.*, ¶¶22, 56 ("Because these statements mirrored the statutory standard, they met the statutory standard.").[8] While this might be a case where the trial court "could have made more detailed and thorough factual findings," eliminating the delay and resources expended on this appeal, the Record in this case was sufficient. *See D.K.*, 390 Wis. 2d 50, ¶55.

¶17 Finally, this court acknowledges the County's argument that Thomas's appeal is moot. Our supreme court has determined that mental commitment appeals are not moot based upon two (or possibly three) collateral consequences. *See Sauk County v. S.A.M.*, 2022 WI 46, ¶¶19-20, 402 Wis. 2d 379, 975 N.W.2d 162. In many cases, however, and possibly in this one, these

---

[8] Notably, unlike in a case for which our supreme court has granted review, Monese did specify the particular drug he recommends. *See Winnebago County v. D.E.W.*, No. 2023AP215, unpublished slip op. ¶11 (WI App July 26, 2023), *review granted* (WI Dec. 12, 2023) (No. 2023AP215).

consequences are illusory. For instance, the first consequence articulated in *S.A.M.* is that the subject individual is subject to a firearm prohibition. *Id.*, ¶23. But, as noted in the concurrence/dissent to *S.A.M.*, that ban could be duplicative in some cases, effectively rendering *it* moot. *Id.*, ¶¶41-43 (Ziegler, C.J., concurring in part; dissenting in part). The individual in *S.A.M.*, like Thomas, was already subject to a prior firearm ban from an initial commitment, but the supreme court reasoned that an additional ban could have a practical effect (albeit "marginal") if and when a future court considered restoration of gun rights. *Id.*, ¶23.

¶18 The second collateral consequence mentioned in *S.A.M.* is that a county may seek to recoup payments from the subject individual that it made to supply recovery care and medication. *Id.*, ¶24; *see also* WIS. STAT. § 46.10(2). In this case, as in many (if not most), the County has made no indication that it would seek such reimbursement. Nor has Thomas's counsel indicated that a financial reimbursement demand was actually made by the County. As mentioned, Thomas's latest recommitment expired on December 1, 2023. Nevertheless, and without resolving the issue of whether this appeal is moot, this court affirms on the merits, as discussed in the paragraphs above.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.