STATE EX REL. TOWN OF NORWAY SANITARY DISTRICT #1,
Petitioner-Appellant,

v.

RACINE COUNTY DRAINAGE BOARD OF COMMISSIONERS,
Respondent-Respondent.

Court of Appeals

*No. 97–2861. Submitted on briefs May 7, 1998.—Decided June
17, 1998.*

(Also reported in 583 N.W.2d 437.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Michael F. Dubis* of Waterford.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Matthew H. Quinn* and *Ronald P. Brockman* of *Hand & Quinn, S.C.* of Racine.

Before Snyder, P.J., Brown and Anderson, JJ.

BROWN, J.   The Town of Norway Sanitary District #1 (Sanitary District) contends that the Racine County Drainage Board of Commissioners (Board) does not have the authority to levy an assessment against it even though its sanitation plant is located in a drainage district under the Board's jurisdiction and the plant discharges over 330 million gallons of treated wastewater into the drainage way each year. It contends that it is a municipality, and, therefore, it enjoys

immunity from assessment because § 88.48, STATS., only gives the Board the power to assess municipal lands owned by towns, villages and cities, not town sanitary districts. Also, the Sanitary District claims that even if the Board has the authority to levy an assessment against it, the amount assessed is unreasonable and therefore invalid. We conclude that because a town sanitary district is not a municipality under the statute, its land is not "municipal land." Section 88.48, which only addresses the Board's power to assess county or municipal land, therefore confers no immunity from assessment upon the Sanitary District. We further hold that the Board's assessment is reasonable and equitable and is supported by evidence in the record. We affirm.

The Sanitary District owns about twenty-four acres of land within the Norway-Dover drainage district upon which it operates its sanitation plant. The plant provides services (the collection of wastewater) to approximately 2000 residences, the vast majority of which are located within the Norway-Dover drainage district. As part of its normal operations, the sanitation plant discharges approximately 330 million gallons of treated wastewater per year into a drainage channel maintained by the Norway-Dover drainage district. Since 1993, the Norway-Dover drainage district has been under the Board's jurisdiction.

In June 1984, a report was prepared to determine the benefits, damages and allowances for each parcel of land in the Norway-Dover drainage district. The amount of benefits assessed to the Sanitary District ($250) was calculated based upon the surface water drainage from its twenty-four acres of land. Its wastewater discharges into the drainage channel were not included in the assessment. However, the Sanitary

District apparently did not pay an assessment to the drainage district based strictly upon the benefits calculated in this report. Instead, prior to the report being issued, it entered into a contract with the Norway-Dover drainage district in which it agreed to pay the drainage district $1000 per year for ten years in lieu of any further assessments. The contract ended on December 31, 1993.

In 1990, the Board approved a project to restore the channels in the drainage district. Although the project was approved as a single plan, it was subsequently broken down into three phases. Phase one and two were apparently completed before the end of 1993, although the record is unclear as to an exact date. However, the Board has yet to commence work on phase three. This is because the original plan for phase three ran into problems when the Wisconsin Department of Natural Resources (DNR) demanded that the plan for restoring the channel system be changed for environmental reasons. As a result of these changes, when the drainage district placed phase three of the project for bids in 1992, the cleanup costs increased from the original estimate of approximately six hundred thousand dollars to one and one-half to two million dollars. This amount exceeded the Board's budget for the project and it was withdrawn until funding could be arranged.

In 1996, the Board discovered that its 1984 benefit calculation for the Sanitation District was incorrect because it omitted the substantial wastewater discharges by the Sanitary District into the drainage system each year. The Board recalculated the benefits for the Sanitary District to include the wastewater discharges, and in July 1996, the Board levied an assessment on the Sanitary District "equal to $ 10.00

per household [per year], or such other entity that discharges their sewage to the Norway Dover drainway through the [Sanitary District's] sewage treatment plant."[1] The assessment levied was to apply for ten years and because the Sanitary District served approximately 2000 households, the assessment was estimated to be $20,000 per year or $200,000 over the ten-year period. As part of the assessment, the Board stated that no other assessments would be levied against the Sanitary District during the ten-year period. The assessment was based on the new determination of benefits, which amount included past omitted assessments, as well as the Sanitary District's proportional share of the cost for ongoing maintenance and repair, operational expenses and the cost of the planned phase three restoration project.

The Sanitary District contested the assessment before the Board, and following a hearing in which the Board upheld its assessment, it petitioned the trial court for a writ of certiorari to review the Board's action. The Sanitary District's arguments were connected to its core complaints that the Board had no authority to levy an assessment upon it and that the amount assessed was unreasonable and inequitable. It also raised a due process argument that the Board's proceedings were unfair because the parliamentarian for the hearings was an associate in the opposing counsel's law firm.

The trial court held that both the statute and administrative code clearly granted the Board the authority to assess lands owned by the Sanitary District. It also held that the collection of any past omitted

[1] The record is unclear as to what amount, if any, the Sanitary District paid to the Board between the time the contract terminated in 1993 and the Board's 1996 assessment.

assessments was barred by the 1984 contract between the Sanitary District and the Norway-Dover drainage district. But the court found that barring the collection of any past omitted assessments did not make the assessment of $10 per year per household inequitable. It found that an assessment of almost $200,000 over a ten-year period was reasonable and equitable given the benefits enjoyed by the Sanitary District and the two million dollar projected cost for future maintenance and repair of the drainage system. Finally, the court rejected the due process claim because the Sanitary District failed to show it was prejudiced in any way by the procedures used for the hearings. The Sanitary District has abandoned on appeal its argument that the Board's proceedings violated due process. Similarly, the Board does not appeal the trial court's ruling that it cannot collect any past omitted assessments. Thus, the only issues before us are whether the Sanitary District enjoys immunity from being assessed and, if not, whether the assessment was unreasonable or arbitrary.

We first address the Sanitary District's argument that the Board was without authority to levy an assessment against it. The parties initially dispute our standard of review regarding this issue. The Sanitary District maintains that whether the Board has the authority to levy an assessment upon a town sanitary district is a question of statutory interpretation. Statutory interpretation is a question of law which we may review de novo. *See DILHR v. LIRC,* 161 Wis. 2d 231, 245–46, 467 N.W.2d 545, 550 (1991).

The Board argues, however, that because it has special expertise and experience in the field of drainage

law, its legal conclusions are entitled deference. The Board cites cases where our state appellate courts have granted deference to state agencies that have either prior experience or certain expertise in analyzing statutes pertaining to their field of technical competence and seeks to apply those cases here. The Sanitary District responds by arguing that no deference is owed because the Board is not a state agency. But whether the Board is a state agency is not the determinative question. The issue is whether the Board's statutory interpretation is owed deference due to its specialized knowledge, experience and expertise in drainage issues. The general rule is that we defer to an agency's interpretation of a statute if the agency can show that its prior experience with the statute or its possession of "technical competence[ ] and specialized knowledge [will] assist [it] in its interpretation."[2] *Id.* at 246, 467 N.W.2d at 550. While we have no doubt that the Board possesses some unique experience in the general area of drainage that most citizens lack, the Board has failed to advance any proof that it possesses the "technical competence" in drainage engineering and the "specialized knowledge" to convince us that we should defer to its judgment about the law. Indeed, given the question at hand—whether the authorizing statute fails to mention sanitary districts—we fail to see how

[2] No such evidence is necessary where the legislature has specifically charged the agency with the duty of administering and applying a particular statute. *See Lisney v. LIRC,* 165 Wis. 2d 628, 634 n.4, 478 N.W.2d 55, 57 (Ct. App. 1991), *rev'd on other grounds,* 171 Wis. 2d 499, 493 N.W.2d 14 (1992). Because no statute specifically charges the Board with the duty of administering and interpreting laws pertaining to the drainage of lands, we may not presume that the Board is competent to do so and entitled to judicial deference.

its technical competence and specialized knowledge, even if it had proven them, would give it any greater insight in construing the statute than this court. Nor has the Board shown us any prior experience with the statute in question. We therefore review the issue of whether a drainage board has the authority to assess lands owned by a town sanitary district without deference to the Board's conclusions.

The power to levy an assessment exists by right of statute, and the restrictions of the statute must be met if the assessment is to be deemed valid. *See Dewey v. Demos,* 48 Wis. 2d 161, 167, 179 N.W.2d 897, 899 (1970). Section 88.35(1)(b), STATS., gives a board broad authority to assess benefits accruing to each parcel of land within a drainage district. Land subject to assessment of benefits is defined to include "any real property or interest therein, whether privately or publicly owned." Section 88.01(11), STATS. And § 88.23, STATS., permits a board to levy assessments apportioned to the confirmed benefits for the costs of maintenance and repair or for any other lawful expenditure. It is therefore obvious that the legislature has specifically given drainage boards broad powers to levy assessments against public and privately owned land within their jurisdictions. We conclude that land, although publicly owned, is subject to assessment by a board in proportion to its confirmed benefits.

The Sanitary District does not appear to dispute this. It points out, however, that § 88.48, STATS., entitled "[a]ssessment of county and municipal lands," specifically lists the municipal lands a board has the authority to assess. This section states that land owned by a county, town, village or city may be assessed benefits the same as other lands within the district. The

Sanitary District contends that it is a municipality, and, therefore, its land is "municipal land." Thus, because § 88.48 does not state that a board may assess lands owned by town sanitary districts, the legislature has specifically excluded this category of municipal lands from assessment. The Board replies that a town sanitary district is not a municipality; therefore, it is of no consequence that town sanitary districts are not included in the list of municipal lands subject to assessment. We agree with the Board so far as this statute is concerned.

Under § 60.77, STATS., a town sanitary district is a body corporate with the powers of a municipal corporation. It is a distinct and separate corporation from the town that created it and which it serves. *See Wisconsin Gas Co. v. Lawrenz & Assocs.,* 72 Wis. 2d 389, 397–98, 241 N.W.2d 384, 389 (1976). But the fact that a town sanitary district is created under the laws of Wisconsin and given the powers of a municipal corporation does not per se mean it is considered a municipality (whose land is therefore municipal land) under ch. 88, STATS. A municipality is generally defined as "[a] legally incorporated or duly authorized association of inhabitants of limited area for local governmental or other public purposes." *Green Bay Metro. Sewerage Dist. v. Vocational, Technical & Adult Educ., Dist. 13,* 58 Wis. 2d 628, 637, 207 N.W.2d 623, 628 (1973) (quoting BLACK'S LAW DICTIONARY (4th ed. 1968)). It generally refers to a city, borough, town, township or village. *See* BLACK'S LAW DICTIONARY 1018 (6th ed. 1990). Town sanitary districts are not necessarily included in the definition of municipalities and only on occasion is the definition expanded to include "every kind and character of public corporations which are created by statute or the Constitution of the state." *Green Bay,* 58 Wis. 2d at 638, 207 N.W.2d

at 628. In addition, case law in Wisconsin has recognized that town sanitary districts are " 'municipalities' in the broad sense of the term only." *Wisconsin Gas,* 72 Wis. 2d at 397, 241 N.W.2d at 389. An examination of the statutes confirms our conclusion that town sanitary districts are not municipalities unless specifically defined as such. In § 990.01(22), STATS., the legislature has instructed us that in the absence of a specific definition the term "municipality" shall be construed to include "cities and villages" and that it "may be construed to include towns." Town sanitary districts are conspicuously absent from this definition.

Turning to ch. 88, STATS., we observe that it neither defines the term "municipality" for that chapter[3] nor is it explicit as to what constitutes municipal land under § 88.48, STATS. In the absence of a specific definition, therefore, the term "municipality" refers only to cities and villages and sometimes towns. *See* § 990.01(22), STATS. Consequently, the legislature's decision not to include land owned by a town sanitary district within § 88.48 cannot be construed to confer immunity upon the Sanitary District from assessment.

We now reach the Sanitary District's second argument, that the assessment levied against it is unreasonable, arbitrary and inequitable. On review of a trial court's decision in a certiorari proceeding, our standard of review is the same as that of the trial court and we decide the merits of the matter independently of the trial court's decision. *See State ex rel. Staples v.*

---

[3] Section 88.64(1)(b), STATS., defines "municipalities" to mean a city, village or town. However, the definition is specifically limited to that section and is therefore inapposite to the issue of whether a town sanitary district is a municipality whose land is considered municipal land under § 88.48, STATS.

*DHSS,* 136 Wis. 2d 487, 493, 402 N.W.2d 369, 373 (Ct. App. 1987). The comment to 1993 Wis. Act 456, § 21, states that pursuant to § 88.09, STATS., the court reviews the board's actions to determine if it acted unreasonably or made a decision unsupported by substantial evidence. An assessment is reasonable "if it is fair and equitable and in proportion to the benefits accruing." *Peterson v. City of New Berlin,* 154 Wis. 2d 365, 371, 453 N.W.2d 177, 180 (Ct. App. 1990).

The Sanitary District sets forth three contentions to support its challenge. First, it contends that nothing in the record suggests that it will receive a benefit from the planned phase three restoration project because completion of phase three is only speculative. Its argument focuses on the fact that the Board withdrew the project from bidding and placed it on hold after the cost escalated due to the DNR's demands. The Sanitary District posits that it will receive no benefit from the project because it was withdrawn and nothing in the record suggests that it will ever be completed. It concludes that the projected cost of the project should not have been a factor in the assessment.

The Sanitary District cites to 70A AM. JUR. 2D *Special or Local Assessments* § 24 (1987), to bolster its argument. That section states in part: "Benefits arising from improvements which depend upon contingencies and future action of public authorities cannot be considered in estimating an assessment . . . ." The Sanitary District also refers us to two cases cited by that authority. In one, *Kansas City v. St. Louis & S.F.R. Co.,* 130 S.W. 273, 275 (Mo. 1910), the court held that the city could not assess the plaintiff for the construction of a viaduct because the city had not taken any official action in the matter and there was no reasonable certainty of accomplishment of the design. It noted that

the city had no money to construct the viaduct and it was therefore forbidden by charter to pass an ordinance undertaking the work. *See id.* Moreover, the design of the viaduct was undecided, and it was not even settled if one or two different viaducts would be constructed. *See id.* In the second case, *City of Lawton v. Akers,* 333 P.2d 520, 524–25 (Okla. 1958), the court denied an assessment against residential property because it would receive no benefit unless rezoned for business use. But the removal of the residential zoning restriction was contingent upon the action of other public officials, and it was therefore speculative as to whether the zoning restriction would be lifted. *See id.*

■■

None of the uncertainties surrounding the proposed projects and benefits in the cases cited by the Sanitary District are present in the case at bar. The Board has drawn up and approved a specific restoration project. The project is not contingent upon the approval of any other public authority. Nor is the Board prohibited from raising funds to pay for the project. Moreover, phases one and two have already gone forward and over $500,000 has been expended. Phase three was delayed only because the DNR's environmental demands raised the price of the project beyond what the Board had anticipated it would cost. Although the project has been withdrawn, the Board has not terminated the original plan—it is still an approved project and planned maintenance. And nothing in the record suggests that the Board has abandoned its original restoration plan and that it does not intend to acquire funding to complete phase three of the project. The Sanitary District's argument that the project will never be completed is therefore unsupported by the record.

Second, the Sanitary District asserts that the total amount of the assessment is neither reasonable nor equitable. We have already stated how § 88.23(1), STATS., allows a board to levy assessments for the cost of maintenance and repair or for any other lawful expenditure. However, the Sanitary District claims that pursuant to § 88.64, STATS., a board can levy an assessment against it only after the board demonstrates that the sanitary district has made additional discharges into the drainage channel, and that these additional discharges have diminished the channel's capacity. But § 88.64 is applicable only if a board is seeking to assess an upstream municipality located *outside* of its jurisdiction. Because the Sanitary District is clearly located within the boundaries of the Norway-Dover drainage district, it is within the Board's jurisdiction; it is not an upstream municipality within the meaning of the statute. We accordingly dismiss the Sanitary District's arguments that the Board did not comply with § 88.64 when it levied the assessment.

Third, the Sanitary District claims that the assessment of $10 per household per year is unreasonable because it was not based on any engineering calculations but on the Board's perception of what would be "fair." That is, it argues that the amount is arbitrary and without basis in fact. We disagree.

Lyle Jasperson, a Board member, testified that he proposed, and the Board accepted, waiving all past and future assessments and instead assess the Sanitary District based on a flat rate of $10 per household per year for the next ten years, which he concluded was equitable and fair. This amount was based upon the Board's reassessment of benefits to the Sanitary Dis-

trict. The Board further concluded that the assessment was equitable because it allowed the Sanitary District to enjoy the time value of money and gave it ten years of immunity from further special assessments.

Based upon our review of the record, we conclude that the Board's assessment is reasonable. The Board recalculated the Sanitary District's proportional share of benefits after discovering that the 1984 engineering report and resulting assessment did not account for the Sanitary District's discharge of over 330 million gallons of treated wastewater into the channel each year. WISCONSIN ADM. CODE § ATCP 48.06(2) allows a board to adjust as necessary benefits in a drainage district to correct any inequities or injustices found by a board. Nor do we find anything improper in a board's decision to include a sanitary district's wastewater discharges into the drainage flow. WISCONSIN ADM. CODE § ATCP 48.10(1) permits a board to consider wastewater discharges when assessing benefits to nonagricultural lands in a drainage district.

Based on its reapportioning of benefits to account for the substantial wastewater discharges, the Board determined that the Sanitary District's proportional share for the phase three project was approximately ten percent of the estimated two million dollar cost, or approximately $200,000. The Board's estimate of the phase three restoration cost is not unreasonable. The Board's estimate was based on a report by Pete L. Baily, an engineer for the Board, who determined that because of the DNR requirements the cost of the project would be between one and one-half to two million dollars. Although the Sanitary District seems to question this figure, it does not point to any evidence in the record disputing this estimate. Furthermore, because the Sanitary District serviced approximately 2000 resi-

dences, the Board determined that a flat rate of $10 per user per year was equitable. The Board may assess benefits on a flat rate per residence basis. *See* WIS. ADM. CODE § ATCP 48.10(2). Moreover, the Board's decision was reviewed by Walter Madsen, an engineer with thirty years of drainage experience. He testified that in his expert opinion, both the recalculation of benefits and the Board's decision to levy an assessment of $10 per household per year was reasonable and equitable. The Board's determination that the assessment is reasonable and equitable is therefore amply supported by evidence in the record.

*By the Court.*—Order affirmed.