John A. BALCERZAK, Plaintiff-Respondent,†

v.

BOARD OF FIRE AND POLICE COMMISSIONERS FOR the CITY OF MILWAUKEE and Chief of Police Philip Arreola, or his successor, Defendants-Joint-Appellants.

Court of Appeals

*No. 98–2889. Submitted on briefs November 2, 1999.—Decided February 15, 2000.*

## 2000 WI App 50

(Also reported in 608 N.W.2d 382.)

†Petition to review denied.

644

On behalf of the defendant-appellant Board of Fire and Police Commissioners for the City of Milwaukee, the cause was submitted on the briefs of *James C. Reiher* and *Maureen A. Hegarty* of *VonBriesen, Purtell & Roper, S.C.*, of Milwaukee. On behalf of the defendant-appellant Chief of Police, the cause was submitted on the briefs of *Grant F. Langley*, city attorney, and *Rudolph M. Konrad*, deputy city attorney.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Laurie A. Eggert* and *Jonathan Cermele* of *Eggert Law Office, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. CURLEY, J. The City of Milwaukee Board of Fire and Police Commissioners (FPC) and the Chief of Police (Chief) appeal the circuit court's grant of summary judgment to Milwaukee Police Officer John A. Balcerzak in Balcerzak's disciplinary proceeding. The FPC and the Chief assert that the circuit court erred in finding that the statutory language found in WIS. STAT. § 62.50(17) (1989–90),[1] "be suspended without pay for

---

[1] Unless otherwise indicated, all statutory references are to the 1989–90 version of the Wisconsin Statutes.

a period not exceeding 60 days," was unambiguous. Further, the FPC and the Chief claim that the circuit court erred in deciding that the holding in *State ex rel. Smits v. City of De Pere Board of Police & Fire Commissioners*, 104 Wis. 2d 26, 310 N.W.2d 607 (1981), was dispositive and that, as a result, the FPC exceeded its jurisdiction in suspending Balcerzak for sixty working days. We conclude that the clause found in § 62.50(17) is ambiguous and that the *Smits* case is not dispositive. In applying the rules of statutory construction, we are persuaded that the FPC's and the Chief's interpretation of the statute—that suspensions must be applied to working days—is correct, as evidenced by its twenty-year practice of issuing suspensions for working days. Thus, we reverse.

## I. BACKGROUND.

¶ 2. The circumstances surrounding this litigation began on July 22, 1991, when Milwaukee Police Officers John Balcerzak and Joseph Gabrish responded to a citizen complaint. Upon arriving at the dispatched location, the officers encountered the now infamous serial killer, Jeffrey Dahmer, and his victim, Konerak Sinthasomphone. After conducting a brief investigation, the officers released Sinthasomphone, who was a minor, into Dahmer's care. Dahmer murdered Sinthasomphone shortly thereafter. When the officers' decision to release Sinthasomphone to Dahmer became public, the then-Chief of Police dismissed the officers from the Milwaukee Police Department for violating various department rules during their investigation. Both officers appealed their dismissals to the FPC, which upheld their discharges.

¶ 3. The officers appealed the FPC's decision to the circuit court pursuant to WIS. STAT. § 62.50(20).[2] The circuit court found that discharging the officers was an unreasonable discipline and remanded the matter to the FPC, suggesting that, under all the circumstances, discipline consisting of a "suspension not to exceed sixty days would more appropriately serve the ends of justice." In effect, the circuit court recommended that the FPC apply the maximum period of suspension permitted under § 62.50(17).[3] The FPC, in response to the circuit court's suggestion, vacated the discharge of both officers and suspended them without pay for a period of 60 days. The FPC then authorized the Milwaukee Police Department to determine the actual dates of the suspension. In response to

[2] WISCONSIN STAT. § 62.50(20), provides:

**Police and fire departments in 1st class cities.**

(20) CIRCUIT COURT REVIEW; NOTICE. Any officer or member of either department discharged, suspended or reduced, may, within 10 days after the decision and findings under this section are filed with the secretary of the board, bring an action in the circuit court of the county in which the city is located to review the order. Such action shall begin by the serving of a notice on the secretary of the board making such order and on the city attorney of such city, which notice may be in the following or similar form . . . .

[3] WISCONSIN STAT. § 62.50(17) provides:

(17) DECISION. Within 3 days after hearing the matter the board shall, by a majority vote of its members, determine whether by a preponderance of the evidence the charges are sustained. If the board determines that the charges are sustained, the board shall at once determine whether the good of the service requires that the accused be permanently discharged or be suspended without pay for a period not exceeding 60 days or reduced in rank. If the charges are not sustained the accused shall be immediately reinstated in his or her former position, without prejudice. The decision and findings of the board shall be in writing and shall be filed, together with a transcript of the evidence, with the secretary of the board.

the FPC's order, the department reinstated the officers and ordered that they be suspended "without pay for sixty (60) consecutive workdays effective 11–27–92," in accordance with its long-standing practice of applying suspensions to working days.

¶ 4. This disciplinary order was also appealed to the circuit court by both officers.[4] Balcerzak filed a summary judgment motion, which the circuit court granted. The circuit court determined that the Chief and the FPC exceeded their jurisdiction when they suspended Balcerzak for sixty working days. The circuit court concluded that the term "days" found in WIS. STAT. § 62.50(17), was not ambiguous, and that the holding in *Smits* mandated that the suspension be applied to calendar days. As a result, the circuit court granted Balcerzak's summary judgment motion, ordering the FPC to "define the length of [Balcerzak's] disciplinary suspension as 60 calendar days." The circuit court further ordered that Balcerzak be restored any rights that he may have lost as a result of the longer suspension.

## Standard of Review

¶ 5. This is an appeal from an order of the circuit court on certiorari review of the FPC's decision suspending Balcerzak for sixty working days. "On review of a trial court's decision in a certiorari proceeding, our standard of review is the same as that of the trial court and we decide the merits of the matter independently of the trial court's decision." *State ex rel. Town of Norway Sanitary Dist. No. 1 v. Racine County Drainage*

---

[4] Before the circuit court rendered a decision, Joseph Gabrish's case was resolved by stipulation.

*Bd. of Comm'rs*, 220 Wis. 2d 595, 605, 583 N.W.2d 437 ( Ct. App. 1998). Here, the circuit court granted summary judgment to Balcerzak. Our review of summary judgment is *de novo. See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 313–15, 401 N.W.2d 816 (1987). The standards for summary judgment are set forth in WIS. STAT. § 802.08, and have been summarized in many cases. *See, e.g., id.* at 315 (setting out the "standard methodology which a trial court follows when faced with a motion for summary judgment"). They do not bear repeating here. We have also been called upon to interpret WIS. STAT. § 62.50(17). "The interpretation of a statute is a question of law which this court reviews independently, without deference to the lower courts." *State v. Sweat*, 208 Wis. 2d 409, 414–15, 561 N.W.2d 695 (1997).

## II. ANALYSIS.

### A. WISCONSIN STAT. § 62.50(17) is ambiguous.

¶ 6. Chapter 62 of the Wisconsin Statutes regulates cities in Wisconsin. First class cities are defined in WIS. STAT. § 62.05(1)(a), as "cities of one hundred and fifty thousand population and over." The regulations pertaining to police and fire departments of first class cities can be found in WIS. STAT. § 62.50. Pursuant to § 62.50(11), a police chief may discharge or suspend an officer for more than thirty days only for cause and only after a trial is conducted before the FPC. Under § 62.50(17), if the FPC sustains the charges after a trial, the FPC is given the authority to permanently discharge an officer or suspend the officer "without pay for a period not exceeding 60 days or reduced in rank." The FPC contends that this language is ambiguous because to give effect to the language "without pay"

requires the suspension to be applied to the officer's working days, while the words "not to exceed sixty days" suggest that the suspension be applied to calendar days.

¶ 7. " '[A] statutory provision is ambiguous if reasonable minds could differ as to its meaning.' " *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 283, 548 N.W.2d 57 (1996) (citation omitted). "When construing a statutory provision, the entire section and related sections of the statute should be considered." *Sweat*, 208 Wis. 2d at 416. "Ambiguity can be found in the words of the statutory provision itself, or by the words of the provision as they interact with and relate to other provisions in the statute and to other statutes." *Id.* at 416.

¶ 8. As noted, WIS. STAT. § 62.50 applies only to first class cities and sets forth the manner and procedure for disciplinary actions and the types of discipline permitted. Section 62.50(17) states that the length of a suspension cannot exceed sixty days, but it also directs that suspensions must be without pay. Inasmuch as the statute's subject matter deals with the imposition of discipline on officers and contains the directive that suspensions be without pay, the language following it—"not to exceed sixty days"—presents a conundrum. This is so because in order to follow the requirement that the suspension be without pay, a suspension of time must be applied to days when the officer would ordinarily work. As observed by the FPC in its briefs, a one-day suspension applied to a day off would run afoul of the statutory directive that suspensions be "without pay." On the other hand, if the literal meaning of "not to exceed 60 days" is followed, the suspension would have to be applied to sixty calendar days. Because

either interpretation of the statute is reasonable, we conclude that the phrase is ambiguous.

B. The *Smits* holding does not apply to WIS. STAT. § 62.50(17).

¶ 9. Balcerzak argues that the holding in *Smits* controls the result of this case and requires us to conclude that suspensions must be applied to calendar days. We decline to apply the holding in *Smits* to this case because *Smits* did not interpret the statute in dispute here, nor did it involve a long-standing policy to apply suspensions to work days. Further, our reading of *Smits* suggests it was fact-intensive, requiring us to read it narrowly.

¶ 10. Thomas Smits was a police officer for the City of De Pere. The chief of police brought nine charges of misconduct against him. Unlike the Milwaukee Board of Fire and Police Commissioners, whose disciplinary powers are defined in WIS. STAT. § 62.50, the De Pere Board of Fire and Police Commissioners' disciplinary powers are found in WIS. STAT. § 62.13. With respect to officer discipline, § 62.13(5), in pertinent part, permits:

> (e) If the board determines that the charges are not sustained, the accused, if he has been suspended, shall be immediately reinstated and all lost pay restored. If the board determines that the charges are sustained, the accused, by order of the board, may be suspended or reduced in rank, or suspended and reduced in rank, or removed, as the good of the service may require.
>
> (f) Findings and determinations hereunder and orders of suspension, reduction, suspension and reduction, or removal, shall be in writing and, if

652

they follow a hearing, shall be filed within 3 days thereof with the secretary of the board.

(g) Further rules for the administration of this subsection may be made by the board.

(h) No person shall be deprived of compensation while suspended pending disposition of charges.

The De Pere Board of Police and Fire Commissioners sustained seven of the charges brought by the Chief and terminated Smits. Smits appealed the Board's decision and the trial court, finding that four of the charges could not be substantiated, remanded the matter to the Board for a reevaluation of its sanction. Instead of promptly complying with the trial court's remand, the Board waited three months before it acted on the trial court's directive. Finally, at this delayed proceeding, the Board merely reaffirmed its earlier decision to terminate Smits.

¶ 11. The officer again appealed to the trial court and, again, the trial court reversed the board's determination. This time the trial court's order contained the directive that Smits should be reinstated "forthwith with pay . . . as though he had been in continuous s[er]vice." *Smits*, 104 Wis. 2d at 30. The order also suggested that "suspension without pay not to exceed one year" would be a more appropriate exercise of discretion by the board. *Id.* at 29 (emphasis omitted). The Board failed to follow the trial court's order and neither reinstated Smits with pay nor adopted the trial court's disciplinary suggestion. The Board elected to issue an amended order on the same day the trial court entered its order which retroactively suspended Smits for a period of fifty-two work weeks without pay. This order was ultimately appealed, and this court, as did the trial court, concluded that the Board acted within its juris-

653

diction and applied a correct theory of law in retroactively suspending Smits for fifty-two work weeks. *See id.* at 30.

¶ 12. On appeal, the supreme court determined that the board's failure to accept the trial court's suggested punishment of "suspension without pay not to exceed one year" was an arbitrary and capricious act. *Id.* at 37–38. It ordered that the suspension be applied to a calendar year. *See id.* at 38. It is this holding that Balcerzak argues should govern our interpretation of the statutory language found in WIS. STAT. § 62.50(17). We are not persuaded.

¶ 13. First, we observe that the statute in question, WIS. STAT. § 62.50(17), was not interpreted in *Smits*. As noted, the De Pere Board of Fire and Police Commissioners is regulated by an entirely different statute than that regulating Milwaukee's Board of Fire and Police Commissioners, and the types of discipline afforded to the Boards are different. Second, in *Smits*, when the supreme court determined that a year suspension meant a calendar year, it did so in a different context than that presented here. The supreme court viewed the failure of the Board to follow the trial court's suggested parameter on discipline as further evidence of its ongoing arbitrary and capricious conduct.

> The board, in refusing to impose a penalty that was within Judge Parins' guideline, engaged in arbitrary and capricious action. As this court has stated in *Olson v. Rothwell*, 28 Wis. 2d 233, 137 N.W.2d 86 (1965): "Arbitrary or capricious action on the part of an administrative agency occurs when it can be said that such action is unreasonable or does not have a rational basis. Arbitrary action is the result of an unconsidered, wilful and irrational

choice of conduct and not the result of the 'winnowing and sifting' process." *Id.* at 239 (citations omitted). In refusing to impose a penalty that was within judicial parameters, the board acted in excess of its jurisdiction.

*Smits*, 104 Wis. 2d at 37–38. In *Smits*, it is apparent that the supreme court was responding to the Board's recalcitrance when it required the Board to reduce its suspension to a calendar-year suspension. This is evidenced by the supreme court's statements that it was "troubled by the actions of what we can only perceive to be a recalcitrant board," *id.* at 36, and "[t]he board, perhaps engaging in a game of semantics, suspended petitioner for fifty-two (52) work weeks, which is the equivalent of fifteen (15) months and twelve (12) days," *id.* at 37. The supreme court never addressed whether all suspensions must be for calendar days. In fact, there is no discussion in the case about the efficacy of work-day suspensions. Third, *Smits* involved no longstanding policy of applying suspensions to work days. As will be discussed later, the application of a longstanding policy presents a different legal question than that posed in *Smits*. As a consequence, we read *Smits* narrowly and we conclude that the supreme court directed that Smits's one-year suspension be counted in calendar days simply because the Board's decision to apply a work day suspension was further evidence of the Board's resistance to the trial court's order. Thus, in our view, *Smits* does not ban the use of work-day suspensions.

¶ 14. In contrast to *Smits*, we see no evidence here that the FPC was resisting the trial court's orders. In fact, the record reveals that the chairman of the FPC declared, "[t]he Commission, regardless of its view of the merits of the Court's ruling and order, must at this

time obey and enforce the Court's order." Nor do we see the imposition of a work-day suspension in this instance to be an act of resistance by the board. Rather, the application of suspensions to work days was the long-standing practice of the department. As a result, we decline to apply the implication found in *Smits* that suspensions must always be applied to calendar days.

### C. In applying the rules of statutory construction, we conclude that the interpretation given to WIS. STAT. § 62.50(17) by the FPC is correct.

¶ 15. Having decided that the statutory language is ambiguous and that *Smits* is inapposite, we look to the rules of statutory construction for resolution of the conflict. *See Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 641–42, 586 N.W.2d 863 (1998) ("If the statute is ambiguous, the court turns to extrinsic aids such as the statute's purpose, context, scope and history to ascertain the intent of the legislature.").

¶ 16. As noted, little information about the correct interpretation can be gleaned from reading the statute, nor does our review of the legislative history provide any guidance in resolving the ambiguity. Thus, we next consider the interpretation given the statute by the FPC. The FPC urges us to give its administrative interpretation of the statute great weight deference. *See UFE*, 201 Wis. 2d at 284. The department's policy, instituted over twenty years ago, requires all suspensions to apply to an officer's working days. It has been consistently approved by the FPC. " 'Long and uninterrupted practice under a statute, especially by the officers whose duty it was to execute it, is good evidence of its construction, and such practi-

cal construction will be adhered to, even though, were it *res integra*, it might be difficult to maintain it.' " *Trczyniewski v. City of Milwaukee*, 15 Wis. 2d 236, 240, 112 N.W.2d 725 (1961) (citation omitted) (quoting *Harrington v. Smith*, 28 Wis. 43, 68 (1871)). We are satisfied that the FPC policy deserves great weight deference because the interpretation of the statute is of long standing.

¶ 17. It is undisputed that the Milwaukee Police Department has universally applied suspensions to working days since 1976 and that the FPC has ratified this policy for the same length of time. The record reveals that this method was adopted because of concerns that to do otherwise might lead to inconsistent suspensions and fears that applying calendar-day suspensions might violate the Fair Labor Standards Act. For over twenty years this policy has remained unchanged and unchallenged. We are satisfied that this fact is " 'good evidence of its construction.' " *Id.* (citation omitted).

¶ 18. Further, the flaws of applying suspensions to calendar days is readily apparent by a simple example. If two officers who engage in identical misconduct are both suspended for five days and the calendar day approach is used, their suspensions could well result in unequal treatment as one may be working less days during the five calendar days, and thus, lose less pay. In order to equalize the suspensions, the officer with fewer working days during the suspension would have to be suspended for longer than five days. Should this occur, the officers would be entitled to different appeal rights because pursuant to WIS. STAT. § 62.50(13), an officer who has been suspended for more than five days is provided a direct appeal to the FPC, while a suspension for five days or less requires arbitration. Thus,

under our hypothetical, application of the calendar-day suspension can produce uneven results. Inasmuch as these inequalities can be avoided by using work-day suspensions, we conclude that it is logical, in interpreting the language of § 62.50(17), to suspend officers on working days.

¶ 19. Because we are required to give the FPC's interpretation great weight deference due to its long-standing policy of applying suspensions to working days, and because we are satisfied that the FPC's interpretation of the language "suspended without pay for a period not exceeding 60 days" means suspended on working days, is the more logical interpretation, we adopt the FPC's interpretation. Accordingly, we reverse the order of the circuit court and affirm the order of the FPC.

*By the Court.*—Order reversed.

¶ 20. SCHUDSON, J. *(concurring in part; dissenting in part).* Although I agree we must reverse the circuit court's summary judgment, I depart from the majority's interpretation of "without pay" under WIS. STAT. § 62.50(17) (1989–90). I would remand for further fact finding essential to resolution of the issue on appeal.

¶ 21. In its memorandum decision, the circuit court recognized that "when an officer is suspended without pay, he looses [sic] his police power and all of his paid health insurance (if he is suspended for more than 30 calendar days)." Thus, the circuit court decision accepted Balcerzak's argument: (1) Police officers, on their off-days, retain law enforcement authority and off-duty responsibility, and also retain employee bene-

fits such as health insurance. (2) When suspended for more than thirty calendar days "without pay," police officers lose their health insurance unless they pay the premiums.[1] (3) Therefore a suspension of sixty days "without pay" logically would include the off-days on which the officers lose the City's payment of their health insurance premiums.

¶ 22. "Pay" is defined as "compensation," "wages," and "salary." BLACK'S LAW DICTIONARY 1128 (6th ed. 1990).[2] "Compensation," "wages," and "salary" are defined in many expansive terms that would include benefits. The definitions of "compensation" include "recompense in value," and "recompense . . . for . . . service." *Id.* at 283. "Wages" is defined as:

> A compensation given to a hired person for his or her services. Compensation of employees based on time worked or output of production.
>
> Every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, dismissal wages, bonuses and reasonable value of board, rent,

---

[1] In its brief to this court, the City writes:

Obviously, if an officer is not receiving his or her paycheck for 60 days, the officer's portion of the health insurance premium will not be paid, because no paycheck is issued from which it can be deducted. There is nothing in § 62.50(17), Stats., or the police department suspension that prevents the suspended officer from maintaining his health insurance by paying the premium out of his or her pocket.

Presumably, therefore, to maintain the benefits, the officer would have to pay, out of pocket, both the portion of the premium that would have been deducted from the paycheck and the portion the City would have paid.

[2] I note that the most recent edition of *Black's* contains no definition of "pay." *See* BLACK'S LAW DICTIONARY 1150 (7th ed. 1999).

housing, lodging, payments in kind, tips, and any other similar advantage received from the individual's employer or directly with respect to work for him. Term should be broadly defined and includes not only periodic monetary earnings but also all compensation for services rendered without regard to manner in which such compensation is computed.

*Id.* at 1579 (citations omitted). And the first definition of "[s]alary" is "[a] reward or recompense for services performed." *Id.* at 1337. Thus, as defined and, I think, as generally understood, "pay" includes benefits. Therefore, to the extent that police officers lose benefits even on what would have been off-days during their suspensions, they are "without pay" on those days as well.

¶ 23. Unfortunately, the trial court record does not clarify the way in which the Board computes days on which benefits are lost. The affidavit of Bradley DeBraska, president of the Milwaukee Police Association, states:

When a Milwaukee police officer is suspended without pay, the Milwaukee Police Department requires the officer to surrender his gun, badge and all other indicia of police authority. The MPD informs the officer that he no longer has any police powers during the time that he is suspended.

A suspension without pay which lasts longer than 30 calendar days affects a police officer's right to receive health insurance premiums paid by the City. If an officer is suspended for more than 30 calendar days, the City will not pay premiums for the officer's health insurance benefits.

(Underlining added.) This begs certain computation questions, the answers to which could dictate the calcu-

lation of which days are truly "without pay." Most simply, the questions may reduce to one: When a suspension lasts longer than 30 calendar days, does the City "not pay premiums for the officer's health insurance benefits" for the entire suspension period, or "not pay premiums" only for those days exceeding thirty?

¶ 24. *Accepting* Balcerzak's premise that "pay" includes benefits, two scenarios emerge:

(1) During a suspension *not* lasting longer than thirty calendar days, an officer would *not* be "without pay" on off-days because the City still would be paying for benefits. Therefore, *contrary* to Balcerzak's argument, calculation of "without pay" days would include only workdays.[3]

(2) During a suspension lasting longer than thirty calendar days, an officer would be "without pay" on every day–workdays and off-days–for which the City would not be paying for benefits. Therefore, *consistent* with Balcerzak's argument, calculation of "without pay" days would include workdays, *and* all off-days for which the City would not be paying for the officer's benefits.

---

[3] Even on those workdays, of course, the City still would be paying for benefits. Thus, carrying Balcerzak's premise to the extreme, even those workdays would not be "without pay." Balcerzak, however, does not take the counter-productive position that workdays during a suspension lasting less than thirty days could only be credited against a suspension if the City stopped paying for benefits. Thus, to some extent, Balcerzak seems to be seeking two different rules–designating "without pay" days differently, depending on whether they occur during suspensions of more than or less than thirty days.

In short, to be logically consistent, Balcerzak, in essense, must be saying: "(1) Benefits are part of my 'pay.' (2) If the City continues to pay for my benefits on off-days, I am not 'without pay' on those days off. (3) But when the City, in the course of suspending me for more than thirty calendar days, discontinues paying for my benefits—on both workdays and off-days—I am 'without pay' on *all* those days and, therefore, the off-days must be credited toward my 'without pay' suspension days."

¶ 25. "[U]niformity and consistency" in the application of a statute are appropriate considerations in interpreting statutory language. *State ex rel. Parker v. Sullivan*, 184 Wis. 2d 668, 699, 517 N.W.2d 449 (1994). Moreover, where "uniformity and consistency" have been achieved by an agency's previously unchallenged statutory interpretation that is "of long-standing," and where the agency's interpretation does not "directly contravene[ ] the words of the statute," we defer to that interpretation. *See id.* at 699–700.

¶ 26. I agree with Balcerzak and the circuit court that "pay" includes health insurance benefits. I observe, however, that *acceptance* of Balcerzak's premise may undermine his position, at least in suspensions of less than thirty days. From the record, however, I cannot determine whether the Board's application of the statute is uniform and consistent. Accordingly, I concur in this court's order reversing the circuit court order but respectfully dissent from part of the majority's rationale. I would remand for additional fact finding in order to determine the uniform and consistent application of the statute.