COURT OF APPEALS
DECISION
DATED AND FILED

July 28, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP339**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CV1355

**IN COURT OF APPEALS
DISTRICT II**

---

STATE OF WISCONSIN EX REL. EAGLE LAKE MANOR COMMUNITY ASSOCIATION, INC. AND TOWN OF DOVER,

   PLAINTIFFS-APPELLANTS,

 V.

RACINE COUNTY BOARD OF DRAINAGE COMMISSIONERS,

   DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Racine County: EUGENE A. GASIORKIEWICZ, Judge. *Affirmed*.

Before Reilly, P.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Eagle Lake Manor Community Association, Inc. and the Town of Dover (collectively, "the Association") appeal an order denying their petition for a writ of certiorari.  The Association challenges the decision of the Racine County Board of Drainage Commissioners (the "Board") to annex parcels located in the Eagle Creek watershed based upon the Board's conclusion that those parcels receive drainage benefits but were inadvertently overlooked at the time the drainage district was organized.  We conclude the Association has failed to rebut the presumption of validity afforded to the Board's decision on certiorari review.  Accordingly, we affirm.

## BACKGROUND

¶2     Farm #4 / Eagle Creek Drainage District (the "District") was one of many drainage districts formed in the early 1900s.  As originally established, the District included portions of Eagle Creek, which is an outlet of Eagle Lake.  In December 2014, the Board considered annexing lands that comprised the entire Eagle Creek watershed.  At the time, the District consisted of 263 parcels encompassing 4,160 acres of land, primarily to the north and west of Eagle Lake.  A preliminary review of the Eagle Creek watershed by Mark Madsen, a District engineer with the firm Nielsen, Madsen & Barber, S.C. ("NMB"), estimated that the entire watershed consisted of approximately 1,900 parcels and 10,000 acres of land, including lands to the south and east of Eagle Lake.

¶3     On December 4, 2014, three District landowners petitioned the Board to annex 1,623 parcels.  The petition was prompted by their belief that those outside the District benefited from the drainage provided by the District but, as a

result of their being located outside the District boundary, were not being assessed for the maintenance and upkeep of District facilities.[1] Although the petition referred to an "attached report" by NMB, that reference was in fact to a preliminary map that had been prepared showing the estimated number of parcels and acreage in the Eagle Creek watershed.

¶4 At its December 4, 2014 meeting, the Board deferred action on the petition until NMB could complete a report that included the estimated engineering and legal costs of annexation. The Board discussed the annexation request at its meetings in 2015, during which the Board received the cost estimates and agreed to take other informal steps in anticipation of proceeding with the annexation at the conclusion of the then-current assessment period in 2018.

¶5 Board discussions regarding annexation continued throughout 2017. In 2018, NMB completed its preliminary determination of the annexation boundary. The Board sent letters in January 2019 to affected landowners containing notice of an informational meeting and public hearing on February 26, 2019. At the hearing, the Board responded to public comments and objections, then approved a motion annexing 1,606 parcels into the District.

¶6 The Board entered an order approving the annexation on April 23, 2019, pursuant to WIS. STAT. § 88.78 (2019-20).[2] The order included the Board's finding that the annexed lands are "in fact receiving benefits of [the District's]

---

[1] The District includes numerous drain tile laterals, two open ditch laterals, and a canal that is part of Eagle Creek downstream of the Eagle Lake dam.

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

drains, but such fact was not evident and was inadvertently overlooked at the time of the organization of the [D]istrict in the early 1900's." The Board anticipated that, following annexation, residential parcels would be assessed $250 every five years, while agricultural land would be assessed $28.57 per acre over five years.

¶7 The Association filed a complaint seeking a writ of certiorari adjudging the Board's action null and void. After receiving the record, and following briefing, the circuit court rejected the Association's certiorari claims and denied the writ. The court determined the petition was sufficient, the Board acted reasonably, there was sufficient evidence to support the annexation, and the record did not indicate any attempt to "gerrymander" the drainage district. The Association now appeals.

## DISCUSSION

¶8 Judicial review of a drainage board decision is available by certiorari. WIS. STAT. § 88.09. On certiorari review, we review the board's decision, not the decision of the circuit court. *Kraus v. City of Waukesha Police & Fire Comm'n*, 2003 WI 51, ¶10, 261 Wis. 2d 485, 662 N.W.2d 294. We decide the merits of the certiorari claim independently of the circuit court, applying the same standard of review. *State ex rel. Norway Sanitary Dist. No. 1 v. Racine Cnty. Drainage Bd. of Comm'rs*, 220 Wis. 2d 595, 605, 583 N.W.2d 437 (Ct. App. 1998). The scope of review on certiorari is limited to whether the board: (1) acted within its jurisdiction; (2) proceeded on a correct theory of law; (3) acted arbitrarily, oppressively or unreasonably; or (4) might have reasonably

made the order or finding based on the evidence presented.[3] *Id.* In all matters, we afford the Board's decision a presumption of correctness and validity. *See Edward Kraemer & Sons, Inc. v. Sauk Cnty. Bd. of Adjustment*, 183 Wis. 2d 1, 8, 515 N.W.2d 256 (1994).

¶9 The Association concedes the Board kept within its jurisdiction, insofar as it proceeded under the annexation authority conferred by WIS. STAT. § 88.78. However, it argues the Board's decision fails the other three certiorari inquiries, for various reasons. We reject these arguments as set forth below.

*I. Did the Board proceed on a correct theory of law?*

¶10 The Association first contends the Board's determination was legally flawed because it acted upon an invalid petition. WISCONSIN STAT. § 88.78(2) requires that an existing district landowner petitioning for annexation of other property because of benefits that property receives from a district drain "shall describe the benefited lands and how they are benefited." The Association contends the petition failed to include the necessary information because there was no attached report and the petition was imprecise as to the location of, and specific benefits provided to, the parcels sought to be annexed.

¶11 We conclude the petition was sufficient. It alleged that there were "an additional 1623 parcels outside of the drainage district receiving the benefits of the drainage district, but such benefits were not evident or [were] inadvertently overlooked at the time of organization of the District." Moreover, although there

---

[3] WISCONSIN STAT. § 88.09 empowers the circuit court to take additional evidence. The court did not do so here, and we therefore apply the traditional scope of certiorari review. *See Ottman v. Town of Primrose*, 2011 WI 18, ¶42, 332 Wis. 2d 3, 796 N.W.2d 411.

was no report attached to the petition, the record supports an inference that there was a preliminary map associated with the petition showing the parcels within the Eagle Creek watershed. The petition further alleged that the drainage benefits inuring to those parcels "are the same pecuniary benefits received by parcels currently within the district from the maintenance and improvement of the drainage canal and drainage district field tile for the drainage of water or protection of land from water." We agree with the circuit court's assessment that the petition "need not particularize the benefits received."

¶12    In advocating that more specificity is required, the Association holds petitioning landowners to a higher burden than is contemplated by WIS. STAT. § 88.78(2). The petition adequately described the potentially affected landowners and the alleged benefits they were receiving from the District, which was all that was necessary to trigger the District's obligation to "issue an order directing that the owners of the benefited lands be notified of the filing and contents of the petition." *Id.* Upon receiving such notification, the statute states it is the landowner's burden "to show cause at a fixed time and place, not less than 20 days after the petition is filed, why their lands should not be brought into the district and assessed." *Id.* The Board proceeded on a correct theory of the law by engaging in the process contemplated by § 88.78 based upon the contents of the petition.

¶13    Second, the Association argues that to the extent the petition sought to include the entire Eagle Creek watershed, it was an unlawful gerrymander under *Jefferson County Drainage Board v. Baneck*, 264 Wis. 339, 59 N.W.2d 655 (1953). The current version of the annexation statute states:

> Whenever any lands outside a drainage district are in fact
> receiving the benefits of any drain of such district but such

6

fact was not evident or was inadvertently overlooked at the time of organization of the district, such benefited lands may be annexed under the procedure prescribed in this section.

WIS. STAT. § 88.78(1).  The predecessor statute at issue in *Jefferson County Drainage Board*, however, allowed annexation based only upon a finding that the lands were "in fact receiving the benefits of any drain of such district."  *See* WIS. STAT. § 89.52 (1951).

¶14    The drainage district in *Jefferson County Drainage Board* had been formed in 1950.  *Jefferson Cnty. Drainage Bd.*, 264 Wis. at 345.  It covered a portion of a previous district that had been formed in 1944 but subsequently abandoned in 1945 based upon the petition of a majority of farmers within it.  *Id.* The revived district, which included a private ditch constructed in 1947, annexed additional land twice in 1951 (one of which was voluntary).  *Id.*  Its attempt to annex even more land in 1952—land that also had previously been part of the since-abandoned district—prompted our supreme court to hold that "[t]he drainage law … does not allow the creation of a drainage district piecemeal or by gerrymander."  *Id.* at 341.  The Association emphasizes that the court also stated:

> If, after an examination of the lands described in the petition and all other lands that the board believes will be benefited, the project is first organized by creating a district embracing only a portion of a natural watershed, then any later proceedings which seek to add lands directly affected and of the nature of the lands included in the first organization are without sanction of law.

7

*Id.* Were this not the rule, the court observed that the purpose of requiring a majority of owners within the proposed district to consent to its organization would be defeated.[4] *Id.* at 347.

¶15 The facts of this case are, simply put, not analogous to those in *Jefferson County Drainage Board*. There, the supreme court found it evident that the board was aware of the drainage benefits to the annexed lands at the time of the original proceeding based upon the existence of the private ditch and the involvement of an engineer that had worked for the previous district. *Id.* at 346. The petition here was filed nearly a century after the District's organization. The Association cites no evidence tending to show that, at the time of the District's creation, the Board intentionally excluded the land at issue or had actual or constructive knowledge that the entire Eagle Creek watershed would be benefited by the District drains.

*II. Did the Board act arbitrarily, oppressively or unreasonably?*

¶16 Arbitrary action is the result of an "unconsidered, wil[l]ful and irrational choice of conduct and not the result of the 'winnowing and sifting' process." *Donaldson v. Board of Comm'rs*, 2004 WI 67, ¶63, 272 Wis. 2d 146, 680 N.W.2d 762 (quoted source omitted). Most of the Association's arguments on this point are directed to the sufficiency of the evidence supporting the Board's decision and the notion that the Board attempted to gerrymander the District, both

---

[4] WISCONSIN STAT. chs. 88 and 89 were repealed in 1963, at which time the legislature created WIS. STAT. § 88.78. *See* 1963 Wis. Laws, ch. 572, §§ 1, 2. The language regarding the drainage benefits to nondistrict property being "not evident" or "inadvertently overlooked" was added to § 88.78 at that time, suggesting it was intended to codify the holding of *Jefferson County Drainage Board v. Baneck*, 264 Wis. 339, 59 N.W.2d 655 (1953).

of which we address elsewhere in this opinion. We generally regard a decision that is supported by substantial evidence to also be a rational, reasonable decision. *See **AllEnergy Corp. v. Trempealeau Cnty. Env't & Land Use Comm.**￼*, 2017 WI 52, ¶8 & n.9, 375 Wis. 2d 329, 895 N.W.2d 368 (plurality opinion).

¶17 Aside from challenging the sufficiency of the evidence, the Association also appears to suggest that the Board's decision was arbitrary because it "results in a septupling of the number of parcels assessed and more than a tripling of the number of acres assessed." But the sheer number of parcels or acres added do not concern us, as long as they were eligible for annexation under WIS. STAT. § 88.78(1). Moreover, the record includes the following observation by Madsen: "The discrepancy between the increase in area (2.4) and the difference in parcels (7.1) is due to the large number of small parcels around Eagle Lake itself." There is nothing inherently irrational about the number of parcels or acres added to the District.

*III. Was there substantial evidence supporting the Board's determination?*

¶18 Finally, the Association argues there is no evidence in the record that the annexed lands are benefited by a District drain. We will uphold a determination on certiorari review as long as it is supported by substantial evidence, even if there is also substantial evidence to support the opposite conclusion. *Sills v. Walworth Cnty. Land Mgmt. Comm.*, 2002 WI App 111, ¶11, 254 Wis. 2d 538, 648 N.W.2d 878. Substantial evidence means "credible, relevant and probative evidence upon which reasonable persons could rely to reach a decision." *Id.* The weight to be afforded to the evidence lies within the Board's discretion. *See id.*

¶19 The Association reasons that no annexed land was benefited because all of the District's drains are located within the preannexation boundary. This fact does not, by itself, establish that the annexed parcels receive no drainage benefits from those drains. There were numerous objections from landowners who asserted their parcels did not benefit in any fashion from District facilities. The record demonstrates that the Board referred all such objections to its engineers, who performed onsite inspections where necessary and prepared recommendations for the Board. Those recommendations appear to have been adopted wholesale by the Board, including removing some properties from the proposed annexation.

¶20 Some landowners objected at the February 26, 2019 hearing that, based on the elevations of their land, runoff flowed away from the District. Madsen replied that lands in the Eagle Creek watershed were benefited because drainage facilities convey water from Eagle Creek to the Fox River. It was his opinion that, regardless of the runoff direction, the water "eventually will get to a [D]istrict facility and should be included as part of the [D]istrict." Accordingly, he opined that any properties in the watershed were benefitted by the District's drainage efforts.

¶21 The Association's only response to this evidence is to argue that the Board could not rely on Madsen's statements absent other evidence of corroboration: "a study or prior decision by a court that determined that the annexed land was benefitted by a district drain." The substantial evidence test we apply on certiorari review does not call for such exacting scrutiny. Stated succinctly, we presume that the Board's decision was correct, and in this instance there was evidence from a District engineer on which the Board could reasonably

rely to reach the conclusion that the annexed lands were benefited by District facilities.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.